# CHARLESTON.

MARGARET E. CARTER *et als* v. JAMES A. PRICE *et als.*

Submitted March 9, 1920. Decided March 16, 1920.

1. EQUITY—*Defense of Laches May be Made by Demurrer When Facts Appear on Face of Bill.*

    The defense of laches may be made by demurrer when the facts upon which such defense is predicated appear from the face of the bill. (p. 749).

2.  SAME—*Where Complainant's "Laches" Injuriously affects the Adverse Party, a Court of Equity Will Decline to Give Relief.*

Laches in legal significance is delay in the assertion of a claim which works disadvantage to another, and where it appears that by reason of such delay the adverse party would be injuriously affected because of the death of witnesses by whom the truth of the situation could be proven, or because injury might result to him on account of expenditures made upon the land in the way of improvements, or where no claim is asserted until after the land has grown in value, either because of the development of the territory or the discovery of valuable minerals thereon, and such delay in asserting such claim is so long as to lead to the belief that it is asserted largely because of the increased value of the land and the altered conditions, a court of equity will decline to give relief. (p. 749).

3.  SAME—*Delay in Assertion of Known Rights to Prejudice of Adverse Party is an Estoppel Against Assertion of Such Rights.*

Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. (p. 749).

Appeal from Circuit Court, Kanawha County.

Suit by Margaret E. Carter and others against James A. Price and others. Demurrer to bill sustained and bill dismissed, and plaintiffs appeal.                    *Affirmed.*

*A. M. Belcher,* for appellants.

*Brown, Jackson & Knight* and *M. F. Matheny,* for appellees.

RITZ, JUDGE:

This suit is brought by a daughter and the heirs-at-law of two other daughters of Edmund Price, Sr., against a son of said Edmund Price, Sr., and the descendants of his remaining chil-

dren, and their grantees, for the purpose of having partition of certain real estate of which it is contended said Edmund Price, Sr., died seized; to have an accounting of the rents, issues and profits derived therefrom, as well as an accounting for waste alleged to have been committed thereon; and to have set aside a deed from said Edmund Price, Sr., to his sons Archibald Price, Edmund Price, Burdette Price and James Price, dated the 12th day of February, 1848, and recorded in the office of the clerk of the county court of Kanawha county on said 12th of February, 1848, upon the ground that said deed is a forgery.

The bill shows that Edmund Price, Sr., departed this life intestate, leaving surviving him eleven children; one of whom, Harriett Young and the heirs of two others, are the plaintiffs and one of whom, to-wit, James A. Price, and the heirs-at-law of the others, who are deceased, are the defendants, together with sundry of their grantees. It is alleged that at the time of the death of Edmund Price, Sr., he was seized and possessed of a tract of 859 acres of land lying in the county of Kanawha, which was the remainder of a larger tract of more than 1200 acres theretofore conveyed to him, he having in his lifetime conveyed away certain parcels of this 1200-acre tract. It is alleged further that there appears of record in the clerk's office of the county court of Kanawha county a deed of February 12, 1848, purporting to be signed by said Edmund Price, Sr., and to be acknowledged on said 12th of February, 1848, before A. W. Quarrier, clerk of the county court of said county, and admitted to record on said date, purporting to convey to Archibald Price, Edmund Price, Burdette Price and James Price, four of the sons of Edmund Price, Sr., said 859 acres of land, in consideration of one dollar and love and affection; that at the time said deed purports to have been made, to-wit, on the 12th of February, 1848, Edmund Price, Sr., was dead, and had been dead for a period of about six months, and that the said deed was executed in the name of said Edmund Price, Sr., by his son, one of the Grantees, Edmund Price, Jr., and that the other grantees in said deed knew of this forgery by their brother and co-grantee. The bill further alleges that Harriett Young, daughter of the said Edmund Price, Sr., and her two sisters, ancestors of the other plaintiffs were not living at the home of their father at the time of his

death; that they were uneducated and had no knowledge or information of any kind or character of the recordation of said pretended deed, and were not familiar with the fact that deeds were recorded in the office of the clerk of the county court; and that they permitted their said brothers to live upon, use and occupy said lands, during all the years from 1848 to 1915, without requiring any accounting from them, or without making any claim to said land, but without knowledge of the existence or recordation of said deed of February 12, 1848. The bill further alleges that there are some two or three small tracts of land, parts of the larger tract conveyed to the said Edmund Price, which do not purport to have been conveyed by the deed of February, 1848, and that as to these tracts plaintiffs are unquestionably entitled to have partition thereof, and an accounting for waste committed thereon. It is further alleged that leases for oil and gas have been made by various claimants of said land under the alleged forged deed, and that large quantities of oil and gas have been taken therefrom, and that plaintiffs are entitled to have an accounting therefor, as well as to have partition of the estate among them. A demurrer was interposed to the bill upon the ground that the plaintiffs are barred by their laches from asserting their claim, and this demurrer being sustained and the plaintiffs declining to amend the bill, the same was dismissed.

It will be observed that it is not claimed that the plaintiffs or their ancestors did not know that Edmund Price had this estate at the time of his death, conceding that the deed was a forgery. All they contend is that they did not know that there was such a deed until the latter part of the year 1915, nearly 68 years after it was executed and recorded. It apears from the bill that the grantees in that deed, and those claiming under them, have been in possession of the land during all of these years, and have enjoyed all the advantages thereof. It appears further that for this 68 years none of the plaintiffs has asserted any claim to the land, but that in the latter part of the year 1913 a lease was made covering part of the land for development for oil and gas, and according to the allegations of the bill considerable quantities of oil and gas have been procured from this land. It was then that the plaintiffs discovered that they were interested in the land and, as they say, for the first time discovered the ex-

istence of the deed of February, 1848. All of the grantees in that deed are dead except the defendant James A. Price, and he must be a very old man. It does not appear whether or not the clerk of the county court who took the acknowledgment is dead, but more than 70 years have elapsed from the time of the acknowledgment of the deed until the bringing of this suit in June, 1918, and it being fair to assume that said clerk was at least 21 years of age, when he was holding office he would, if still living at this time, be a very old man; in fact, it may well be assumed that he has long since departed this life. The allegations of the bill show that the grantees in the deed treated this land as owned by them during all of these years. They conveyed away, according to the bill, various tracts and portions of it, and, as before stated, in quite recent years they and their vendees made oil leases and had the oil and gas removed therefrom, sold the same, and converted the proceeds to their own use. There is no allegation in the bill that the plaintiffs or their ancestors did not know of their alleged rights and interests in this land, nor is there any allegation in the bill that the defendant James A. Price and the ancestors of the other defendants ever occupied the land under any agreement with the other children of Edmund Price, Sr., or any intimation that their occupancy was other than that of sole ownership. It is not alleged that the grantees in the deed of February, 1848, ever accounted to the other children for any rents or profits from the lands, or that such accounting was ever demanded, or that the right thereto was ever recognized or insisted upon. In fact, there is no suggestion that the title of the grantees in that deed, and those claiming under them, was ever questioned in any way until the bringing of this suit more than 70 years after the deed was recorded, and then only after the discovery of valuable deposits of oil under the land.

That the defense of laches can be taken advantage of by demurrer, when the facts from which the defense appears are shown on the face of the bill, is established in this jurisdiction. *Jarvis* v. *Martin's Admr.*, 45 W. Va. 347; *Thompson* v. *Iron Co.*, 41 W. Va. 574.

As to whether or not a claim asserted will be barred by laches depends upon the circumstances in each particular case. Lapse

of time does not of itself ordinarily bar such a claim. It must be accompanied by some disadvantage to the opposite party. If it appears that it is doubtful whether the adverse party can command the evidence necessary to a fair presentation of the case because of the death of the witnesses to the transaction, or those who might have knowledge of it, this circumstance, connected with long lapse of time, will frequently, unaccompanied by anything else, bar the right to recover, and this is true, even though the period prescribed by the Statute of Limitations has not run. And so where one has obtained property by fraud or mistake, of which he might be deprived if seasonable resort were had to a court of equity, if the claimants permit a long time to elapse without asserting their claim, during which improvements have been made upon the land, as was the case here, by the developing of the same for oil, or the same has become suddenly valuable by reason of the discovery of minerals of various kinds thereon, or if it has come into the market because of territorial development, relief will ordinarily be denied in equity, even though a very much shorter time has elapsed than in this case. Or, if the rights of third parties have intervened, courts will be slow to upturn the same at the suit of one who has lain by with full knowledge, or the means of knowledge, for a long time and allowed others to deal with the property as though such claimants had no interest therein. 10 R. C. L., Title "Equity" §§142 etc.; Story's Equity Jurisprudence, §85; Pomeroy's Equity Jurisprudence, §§1442 etc. These texts and the authorities cited to support them fully sustain the principles above enunciated. In few of the adjudicated cases do we find a claim so old as the one attempted to be asserted here. We find in this case that because of the long lapse of time, most of the witnesses who know anything about the original transaction are dead, and their evidence not obtainable. We find further no assertion of their claim by any of the plaintiffs, or those under whom they claim for more than 70 years. We find that the rights of third parties have intervened, that valuable improvements have been made upon the land in the way of developing the same for oil, and that it was not until after it was shown that these developments made the land very valuable that the plaintiffs asserted the claim set up in this suit. It thus ap-

pears that nearly all of the elements which the texts say bar a claim for laches exist in this case in a magnified degree. We are, therefore, of opinion that there was no error in sustaining the demurrer to the bill.

It is insisted further by the plaintiffs that there are two or three small tracts of land not included in the deed of February, 1848, parts of the larger tract of 1200 and some acres. This allegation cannot be true for that deed, which is exhibited with the bill, on its face conveys all of the tract of twelve hundred and odd acres not theretofore conveyed away by Edmund Price, Sr., so that whatever land Edmund Price, Sr., was possessed of at the date of that deed passed by its terms.

We find no error in the decree of the circuit court, and the same is affirmed.

*Affirmed.*