# CHARLESTON.

V. S. LYNCH *et als. v.* L. C. LOWTHER *et als.*

Submitted February 21, 1922.    Decided February 28, 1922.

TRUSTS—*Bill to Establish Resulting Trust in Minerals Held Subject to Demurrer for Laches.*

Where after many years of unexplained delay plaintiffs file their bill to establish a resulting trust in all the coal and other minerals under a tract of land, depending wholly on parol evidence, show that the rights of third parties have intervened and that a purchaser of the coal whom they allege had notice of the trust has died and seek relief against his devisees, and also seek relief against the purchasers of the oil and gas interests, alleging notice of the trust to them, such delay unexcused constitutes laches, and a demurrer to the bill on that ground is properly sustained.

Appeal from Circuit Court, Gilmer County.

Bill by V. S. Lynch and others against L. C. Lowther and others. Bill dismissed, and plaintiffs appeal.

*Affirmed.*

*R. F. Kidd,* for appellants.

*Ambler, McCluer & Ambler,* and *B. W Craddock,* for appellees.

MEREDITH, JUDGE:

Plaintiffs complain of an order dismissing their bill upon demurrer. The property in controversy consists of the coal, oil, gas and other minerals underlying 42 acres of land in Gilmer county. The bill avers that shortly prior to September 18, 1883, Abbie Lowther (now Abbie Allen) agreed with defendant, L. C. Lowther, to purchase jointly with him,

each to take an undivided one-half interest therein, a tract
of land containing 80½ acres, then the property of Abraham
L. Yerkey, at the price of $700.00; that in pursuance of
such agreement Abbie Lowther advanced to L. C. Lowther
$100.00, being one-half of the cash payment, the defendant,
L. C. Lowther, executing his notes for the deferred payments
amounting to $500.00 and the whole of the 80½ acres on
September 18, 1883, was conveyed to L. C. Lowther, who
held one-half thereof in trust for Abbie Lowther; that par-
tition having been agreed upon, L. C. Lowther with his wife,
September 22, 1891, conveyed to Abbie Lowther 42 acres of
the tract, the deed describing the portion granted by metes
and bounds, and concluding with the following provision:

"To have and to hold the said lot tract or parcel of land
and premises thereto belonging with the exception of coal
and mineral.

The said L. C. Lowther of the first part reserves all of the
coal and mineral in the above described tract of land unto
the said Abbie Lowther her heirs and assigns, with covenants
of general warranty."

The bill avers that this provision quoted was explained to
the grantee by L. C. Lowther as being equivalent to a grant
to her of the minerals, and upon this understanding she
accepted the deed. The deed shows that the consideration,
was $375.00, of which $250.00 was paid and the remainder
was to be paid in three annual payments of $42.00 each, with
interest, to secure the payment of which a vendor's lien was
reserved in the deed.

On August 16, 1897, Abbie Lowther and husband execut-
ed a deed to L. C. Lowther, containing the following recital:

"Whereas by a deed dated 22 day of September 1891 of
record in the county clerk's office of Gilmer County in Deed
Book No. 26, page 439, the said L. C. Lowther conveyed to
the said Abbie Lowther a tract of 42 acres of land, on the
waters of Lynch Run in said Gilmer County and therein
fully described by *meets* and bounds, excepting and reserv-
ing from the operation of said deed all the coal and mineral
in and under said tract of land, and

Whereas the said L. C. Lowther failed to reserve the right in said deed to *mone* and remove said coal and mineral in and under said land *land.''*.

The deed then proceeds to grant to L. C. Lowther and his assigns the right of ingress and egress to and from said tract for the purpose of mining and operating upon or under said land for coal and minerals and of removing the same therefrom. This deed was duly acknowledged and was recorded March 31, 1898. The bill avers that this deed was not examined by Abbie Lowther or her husband and was executed by her upon the representation of L. C. Lowther that it was for the purpose of affording him a right of way to the minerals underlying the residue of the 80½ acres retained by him; that by the reservation in the deed of September 22, 1891, and by the deed of August 16, 1897, the defendant L. C. Lowther endeavored to defraud Abbie Lowther of her interest in the minerals under the 42 acre tract; that she had confidence in him and entrusted him as her trustee, and that he abused the confidence by misrepresenting to her the purpose of the said deeds, fraudulently endeavoring to deprive her of her right and title to the minerals in the 42 acres in violation of the trust relation then and still existing between him and the said Abbie Lowther or her assigns, of all of which the defendants, L. C. Lowther and his assigns, had full notice.

On March 28, 1898, Abbie Lowther and husband conveyed the surface of the 42 acres to John Killingsworth, reserving the minerals and mining rights, who, as the bill avers, conveyed the 42 acres, except the minerals, to defendant C. O. Killingsworth, though this last averment is not supported by any exhibit filed with the bill. On July 25, 1900, L. C. Lowther and wife conveyed all the coal under the entire 80½ acres (except a specific reservation of 1 acre) to W. T. Wiant, who died about two years before the institution of this suit, leaving a will by which he devised the coal and mining rights to certain of the defendants, present claimants of the same. On August 22, 1918, L. C. Lowther and wife also conveyed one-half of the oil and gas under the 42 acres to C. O. Killingsworth. On January 4, 1918, Abbie Allen, formerly Lowther, by quitclaim deed conveyed to plaintiff,

V. S. Lynch, and one, H. B. DePue, all her interest in the minerals under the 42 acres in question. The plaintiffs, V. S. Lynch, Charles P. Lynch, W. L. Hart, and R. S. Eskridge, derived their claim through this last conveyance.

Plaintiffs allege that they are the owners in fee of the coal, oil, gas and other minerals underlying the 42 acres and that they are entitled to all of the rights of Abbie Allen therein, and to have enforced the trust which existed or may yet exist in defendant, L. C. Lowther, in respect thereto, and are entitled to relief against his alleged fraudulent acts.

They pray that they may have a decree establishing the trust relations of the defendant, L. C. Lowther and declaring his acts in attempting to divest Abbie Allen of her title to the minerals in the 42 acres fraudulent and void, and to have the deed made by L. C. Lowther and wife to C. O. Killingsworth, dated August 22, 1918, for the oil and gas under the 42 acres and the deed from L. C. Lowther and wife to W. T. Wiant, dated July 25, 1900, for the coal underlying the 42 acres set aside and that the deed from L. C. Lowther and wife to Abbie Lowther, dated September 22, 1891, and the deed to him from her, dated August 16, 1897, be construed as grants to her of the minerals under the 42 acres, and that insofar as they lend color to the claim that L. C. Lowther retained the minerals under the 42 acres they be held fraudulent and void.

The defendants demurred to the bill on the ground of laches, which demurrer the court sustained. The plaintiffs failing to amend their bill, the case was dismissed. From that order of dismissal plaintiffs obtained this appeal.

It is argued by counsel for plaintiffs that according to the averments of the bill, and which averment must be taken as true upon demurrer, L. C. Lowther and Abbie Lowther agreed to purchase the 80½ acre tract as a joint venture, contributing equally in the cash payment, and when L. C. Lowther took title to the whole of said tract, a resulting trust was created whereby he held title to a one-half of said tract for Abbie Lowther, and that that trust still remains as to the minerals underlying the 42 acres, notwithstanding the reservation in the deed made to Abbie Lowther by L. C. Lowther

in 1891, and the deed made by her to him for the mining rights in 1897. Assuming that all of the averments in the bill are true, we are of opinion that the plaintiffs are not entitled to the relief prayed for because of laches. Abbie Lowther accepted the deed made to her by L. C. Lowther in 1891 conveying to her the 42 acres with a reservation of the minerals and promptly had her deed recorded. From this time onward she was put upon inquiry as to whether her alleged trustee intended to retain the minerals. And, as plaintiffs averred, without reading the deed of 1897, she executed it, conveying to L. C. Lowther the mining rights for the coal underlying the 42 acres. The original deed to L. C. Lowther was executed nearly 36 years before the institution of this suit; the reservation of the minerals in the deed to Abbie Lowther was made about 28 years before the institution of this suit, and her deed to L. C. Lowther for the mining rights about 22 years before the institution of this suit, and yet during all these years it is not shown in the bill that she made any claim of any kind or character to the minerals underlying this 42 acre tract until 1918; nor is it shown that during this period she paid any taxes upon these minerals, nor is it shown how long she remained ignorant of her rights or of the alleged fraudulent acts of her alleged trustee. Plaintiffs' counsel admit the applicability of the doctrine of laches in suits to enforce  trusts, but they deny that such doctrine applies to the present case, and rely particularly upon the cases of *Patrick* v. *Stark,* 62 W. Va. 602, 59 S. E. 606, and *Carter* v. *Price,* 85 W. Va. 744, 102 S. E. 685. The first case clearly holds that statutes of limitations are not applicable to causes of action falling within the exclusive jurisdiction of courts of equity, and that the enforcement of a resulting trust in land, being a proceeding for the vindication of a mere equitable title not recognized in courts of law, is cognizable in equity alone; but that case also holds that "The equity rule of laches is applicable to proceedings to enforce all trusts affecting title to land, for the establishment of which resort must be had to parole evidence, without regard to classification as express, implied, resultant and constructive trusts." While

that case further holds that generally speaking, any legal disability such as infancy or coverture will excuse delay in suing for the enforcement of a purely equitable right, the plaintiffs in this case in no wise rely upon the coverture of Abbie Lowther. Whether her coverture if properly pleaded would have any bearing upon this case, we need not decide. In the case of *Carter* v. *Price, supra,* the plaintiffs rely upon the following language of Judge Ritz: "As to whether or not a claim asserted will be barred by laches depends upon the circumstances in each particular case. Lapse of time does not of itself ordinarily bar such a claim. It must be accompanied by some disadvantage to the opposite party." They allege that there has been no loss of evidence, no expenditure of money by way of improvements, that there is nothing in the bill to show any increase in the value of the property and that the chief actor in all the detailed transactions is still alive and a party to the suit, and that hence plaintiffs are clearly within the language of the opinion above quoted, but they overlook the further language of that opinion, which says:

"If it appears that it is doubtful whether the adverse party can command the evidence necessary to a fair presentation of the case because of the death of the witnesses to the transaction, or those who might have knowledge of it, this circumstance, connected with long lapse of time, will frequently, unaccompanied by anything else, bar the right to recover, and this is true, even though the period prescribed by the statute of limitations has not run, * * * * or, if the rights of third parties have intervened, courts will be slow to upturn the same at the suit of one who has lain by with full knowledge or the means of knowledge for a long time and allowed others to deal with the property as though such claimants had no interest therein."

W. T. Wiant, who purchased all of the coal and mining rights under the 80½ acres nearly 19 years before the institution of this suit, is dead; although it is alleged in the bill that Wiant had notice at the time of his purchase of the rights of Abbie Lowther in the minerals under the 42 acres, yet his testimony which might wholly repel that statement is

lost by death. While it is alleged that his grantor, L. C. Lowther, the chief actor is alive and fully able to respond in damages upon his warranty to the estate of W. T. Wiant, deceased, yet that does not furnish a sufficient answer. It can not be true, as alleged in plaintiffs' brief, that the Wiant heirs are in no worse position to establish their rights than they would have been had this suit been brought immediately after the recordation of the deed to Wiant. This property may be worth much more than the damages recoverable under the warranty.

Plaintiffs rely upon the alleged fraudulent conduct of defendant, L. C. Lowther, toward their grantor, Abbie Allen, formerly Abbie Lowther, yet they do not state when these alleged frauds were discovered nor give any excuse whatsoever for her failure to attack the alleged unfaithful conduct of her alleged trustee. We do not know when she first became aware of these alleged frauds, whether the same day the deeds were made or the same year, or whether this knowledge came to her at the time she made the conveyance of her alleged interests to Lynch and DePue in 1918; neither is it averred that she was ignorant of the conveyance to Wiant, an act on the part of L. C. Lowther which in itself, if he were her trustee, as alleged in the bill, was a breach of trust. This court has said in the case of *Milling Co.* v. *Read*, 76 W. Va. 557, 85 S. E. 726, "Delay, when there is a reasonable excuse therefor is not laches, but unexplained delay is, and it may be taken advantage of on demurrer." We repeat that no excuse whatsoever for this long delay is shown in the bill.

While mere lapse of time does not ordinarily bar a claim to a resulting trust, yet we know that a long lapse of time may and often does place parties at a great disadvantage, even when all the chief actors may be living. Transactions out of which it is claimed the trust arose may be misconstrued; false construction may be placed upon statements then made or upon the conduct of the parties; memory fades and recollection becomes faulty. Equity does not look with favor upon stale demands, where no excuse is shown for delay in asserting one's rights, even though all the original

parties to the transaction may be alive; and where death has removed one of the chief witnesses and actors in an important transaction, such as the conveyance of the coal and mining rights by L. C. Lowther to W. T. Wiant, and plaintiffs wait for nearly twenty years before calling that transaction in question, without excuse for such delay, equity should not lend them aid. The rights of persons, not parties to the original transaction under which it is claimed the trust arose, are involved. Under such circumstances, such unexplained delay bars relief. The court's decree was clearly right, and it is affirmed.

*Affirmed.*