356 S.E.2d 23

**Melody CALACINO, Admx., etc., et al.**

*v.*

**John McCUTCHEON, et al.**

**No. 16981.**

Supreme Court of Appeals of West Virginia.

April 2, 1987.

P. Rodney Jackson, James M. Barber, Ditrapano & Jackson, Charleston, for appellant.

Edward W. Eardley, Steptoe & Johnson, Henry C. Bias, Jr., Charleston, for appellee.

PER CURIAM:

Melody Calacino, Administratrix of the Estate of Maxwell K. Malcolm, and Melody Calacino, individually, along with the other heirs at law of the decedent, Maxwell K. Malcolm, appeal from the final order of the Circuit Court of Kanawha County dismissing the plaintiffs' civil action seeking rescission of a deed and an accounting of profits or, in the alternative, fair market value of the property and compensatory and punitive damages. The plaintiffs assert that the circuit court erred in holding that the suit was time barred since the deed was signed in April, 1971, and suit was not filed until May, 1980.

When the circuit court granted the motion to dismiss, it had before it certain discovery material which revealed the following facts.[1] The decedent, Maxwell K. Malcolm, owned a four-ninths undivided interest in 1,325 acres in Nicholas County, West Virginia, known as the Payne-Malcolm-Gallagher tract (hereinafter Payne property). In April, 1971, Mr. Malcolm, age sixty-seven, was hospitalized in Charleston, West Virginia.

On Sunday, April 17, 1971, Mr. Malcolm requested that his sons, Maxwell Malcolm, III, and Bruce M. Malcolm, meet with John McCutcheon, an attorney known to Mr. Malcolm for some time. The purpose of the meeting was to have Mr. McCutcheon review an option contract that Mr. Malcolm had received from a third party for the sale of his interest in the Payne property for $15,000. That same day, Mr. McCutcheon met with the two sons, reviewed the document, and visited Mr. Malcolm at the hospital. Mr. McCutcheon stated that Mr. Malcolm expressed a desire to sell his interest in the Payne property except for the oil

---

1. Under Rule 12(b) of the West Virginia Rules of Civil Procedure, when matters outside the pleadings are presented, such as here depositions and interrogatories, the court may consider them and treat the motion "as one for summary judgment" under Rule 56, W.Va.R.C.P.

and gas rights in order to pay hospital bills and real estate taxes in Michigan.

Subsequently, Mr. McCutcheon contacted Harold R. Dietz who agreed to purchase the property. On April 21, 1971, Mr. McCutcheon returned to Mr. Malcolm's hospital room where Mr. Malcolm executed a deed conveying the Payne property surface and coal to Mr. McCutcheon as trustee for Mr. Dietz. As consideration, Mr. Malcolm received $15,000 less an escrow amount to pay off certain judgments for a total of $13,554.54. Mr. Malcolm requested payment in three separate checks, which he personally endorsed and cashed. The deed was recorded within two days of its signing. Mr. Malcolm was later released from the hospital.

The record does not indicate that Mr. Malcolm was under a disability after discharge from the hospital. During the following years mining and timbering activities·yielded a considerable sum of money for the purchasers of his property. Mr. Malcolm received tax tickets showing ownership of a four-ninths interest in the property, "MXC," i.e. minerals except coal. Mr. Malcolm died on September 2, 1979.

The plaintiffs claim that throughout the period of hospitalization Mr. Malcolm was not mentally competent to understand or transact business, Mr. McCutcheon knew of Mr. Malcolm's condition, and, without the consent or knowledge of Mr. Malcolm's family, fraudulently and by deceit had Mr. Malcolm sign the deed.

■ · The plaintiffs place considerable reliance on *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982), where we refused to utilize the bar of laches in a suit to rescind a deed given in October, 1973. The suit was not instituted until six years later. The grantor was a ninety-year-old widow who had conveyed the property to her daughter and granddaughter shortly before her death. The remaining children filed suit to set the deed aside. They claimed that the cause of the delay in bringing the suit was, in part, that the defendants in the past had orally agreed to sell the property and divide the proceeds with them. We did recognize in *Laurie* the equitable nature of the claim and the application of the doctrine of laches and held in Syllabus Point 3:

"Where a suit based on fraud is not for damages but seeks to rescind a writing or impose a trust or other equitable relief, it is not a common law action for fraud but is equitable in nature. Consequently, the doctrine of laches is applicable rather than any specific statute of limitations."

Several crucial distinctions exist in this case that make *Laurie* distinguishable. First, Mr. Malcolm lived some eight years after he executed the deed in 1971. It is not claimed that he was without knowledge of this transaction during this period. Second, the circumstances of the potential sale of the property were known to his two sons at the time Mr. Malcolm was in the hospital. Third, some three years after the deed was given, the property was subject to a partition sale and the rights of others are now affected. We believe this case is controlled by Syllabus Point 2 of *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980):

" 'Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' *Carter v. Price*, 85 W.Va. 744, 102 S.E. 685 (1920) Syllabus Point 3."

The plaintiffs also assert a claim sounding in tort for the defendants' interference with what they would have inherited and claim the fair market value of the property and compensatory and punitive damages. They cite *Barone v. Barone*, 170 W.Va.

407, 294 S.E.2d 260 (1982), where we recognized that in certain instances a beneficiary may have a cause of action against a person who tortiously interferes with a testamentary bequest. In *Barone*, the beneficiary claimed that her brother, who was an attorney, had changed her father's will contrary to his intent and deprived her of her share in her father's estate. Her father executed the will on his death bed.

 Here, the grantor of the deed, Mr. Malcolm, after executing the deed, lived for seven years. He received three separate checks from the deed sale which he deposited after he got out of the hospital. His sons were aware of the initial transaction involving the option contract for the same property since they had discussed the same with Mr. Malcolm's attorney. It can hardly be doubted that they had notice of the transaction. We seriously doubt if a cause of action for interference existed, but even if it did, the two-year statute of limitations would bar it. W.Va.Code, 55–2–12.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.