# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Russell Van Camp; Craig Allen Van Camp, by and through his guardian over his person and estate, Russell Van Camp; and McCamey Oil and Gas, LLC, a Colorado limited liability company,**
**Plaintiffs Below, Petitioners**

**FILED**

**February 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-0760** (Tyler County 16-C-43)

**Timothy C. McIntyre,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Russell Van Camp, individually; Craig Allen Van Camp, by and through his guardian over his person and estate, Russell Van Camp; and McCamey Oil and Gas, LLC, by counsel Bradley W. Stephens, appeal the Circuit Court of Tyler County's July 31, 2018, order awarding summary judgment to respondent. Respondent Timothy C. McIntyre, by counsel Gregory H. Schillace and Timothy J. Manchin, filed a response in support of the circuit court's order. Petitioners did not submit a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 9, 2016, petitioners filed a complaint for declaratory judgment against Respondent Timothy C. McIntyre to resolve ownership of certain oil, gas, and mineral interests underlying a forty-acre tract of land in Tyler County, West Virginia ("forty-acre tract").[1] It is undisputed that in October of 1860, the forty-acre tract, including the mineral and surface rights appurtenant thereto, was owned by Samuel Cox. In May of 1894, Mr. Cox ("the decedent") died intestate and was survived by his wife, Adaline Cox, and his only child, Cedora Cox. Pursuant to the provisions of the law of intestate succession, Adaline Cox was entitled to a life estate in any real property owned by the decedent at the time of his death, with all of the remaining interest in

---

[1] The parties do not dispute that respondent is the owner of the surface of the forty-acre tract.

1

the decedent's property passing to Cedora Cox.

On January 4, 1910, Cedora Cox died testate. Ms. Cox's Will ("Cox Will") contained several specific provisions regarding the forty-acre tract, including the following:

> ITEM 2. I give, devise and bequeath all of my property of every kind, nature, character and description, both real and personal, which shall remain after the payment of my said debts and funeral expenses, to my friend, Dr. G. B. West [("Trustee West")], to be held by him in trust for the use, benefit, maintenance and support of my beloved mother, Adaline Cox, for and during the remainder of her natural life. The said trustee shall use so much of the income from the property so held by him for the comfort and maintenance and support of my said mother as he may deem necessary and sufficient for that purpose, it being my desire that my said mother shall be supported and maintained in a suitable and comfortable manner during her life time.

> ITEM 3. I empower my said Trustee, in the exercise of his judgment, to sell the forty acres of land . . . in Tyler County, West Virginia, which was conveyed unto my father, Samuel Cox, now deceased, . . . obtaining the best price therefor possible, but reserving for the benefit of my estate all of the oil, gas, and mineral rights thereunder, and the money arising from such sale, if made, shall become a part of the estate bequeathed and devised in trust to the said Dr. G. B. West as Trustee in the second item of this my will.

> ITEM 8. After the death of my said mother, . . . then the said Trustee shall convey, transfer and deliver all the rest, residue and remainder of my property and estate, real, personal and mixed, both legal and equitable, and trust funds remaining in his hands as Trustee, including the forty acres of land . . . if not theretofore sold by him, and if sold, then the proceeds as part of the trust fund, and including also the house and lot where I now reside with my said mother . . . together with all of the furnishings and furniture in said house, unto my cousin, William H. Williamson.

By deed dated January 11, 1910, and recorded January 21, 1910, Trustee West and Adaline Cox conveyed to James Oscar Fulmer the forty-acre tract. ("West-Fulmer Deed").

The West-Fulmer Deed contained a provision that

> [t]his conveyance is expressly made subject to all the terms and conditions, rights, and privileges contained in a certain lease for oil and gas purposes now existing and subsisting upon said tract or parcel of land, and which said lease is now owned and operated by

2

the Carter Oil Company, but the said parties of the first part expressly reserve onto themselves all of the rents, royalties, payments and benefits reserved by the terms of said lease and arising and accruing under the terms and conditions thereof.

On March 10, 1910, William H. Williamson died intestate and was survived by his three sons, his sole heirs at law, Melville Williamson, William M. Williamson, and Edward C. Williamson. It is undisputed that Trustee West never conveyed by deed any surface right, mineral right, or other interest in the forty-acre tract to Mr. Williamson's heirs at law.

On November 19, 1912, Adaline Cox died. Trustee West died in 1933.

### Respondent's chain of title

On May 12, 1924, L.J. Laurell, the successor in interest to James Oscar Fulmer, transferred the forty-acre tract to James Nelson and Georgia B. Shreves. In January of 1972, Okey B. VanCamp and Helen B. VanCamp, his wife, and Okey B. VanCamp, as attorney in fact for James Nelson Shreves, transferred the forty-acre tract to Delton and Mary Frances Dillaah. The forty-acre tract was again transferred, on August 18, 1979, by the Dillaahs to Kenneth and Shirleen Heinlein.

By deed dated August 5, 1981, respondent and his wife acquired title to the forty-acre tract from Kenneth and Shirleen Heinlein.[2] The deed transferring the forty-acre tract to respondent and his wife contained the following exception and reservation: "EXCEPTING AND RESERVING from said tract of land all coal, oil, gas, minerals, mining rights, easements and rights-of-way, conveyed, leased, reserved or excepted by the grantors' predecessors in title."

On November 3, 1993, respondent and his wife conveyed the surface of the forty-acre tract to Kevin J. VanCamp and Ruth A. VanCamp. The November 3, 1993, deed contained the following express reservation:

> Grantors hereby except and reserve from this conveyance all coal, oil, gas and other minerals within and underlying the property herein conveyed, together with all necessary mining rights, easements and right-of-way necessary or convenient for the removal thereof.

In August of 2006, respondent entered into an oil and gas lease for the forty-acre tract, on August 17, 2006, with Triad Energy Corporation. On February 22, 2012, respondent entered into a second oil and gas lease with respect to the subject property with Antero Resources.

### Petitioners' chain of title

---

[2] On June 25, 2010, following the divorce of respondent and his wife, the forty-acre tract was deeded, through a straw party, solely to respondent.

Although there was no deed memorializing the purported devise from the Cox Will to Mr. Williamson's heirs, in January of 1913, William M. Williamson and Edward C. Williamson conveyed to Melvin Williamson all of their respective rights, title, and interest in the oil, gas, and mineral rights underlying the forty-acre tract. Ultimately, through a series of subsequent conveyances and devises, Petitioner Russell Van Camp was vested with one-fourth of an undivided interest in the oil, gas, and mineral rights underlying the forty-acre tract, with Petitioner Craig Allen Van Camp holding a similar one-fourth interest, and Petitioner McCamey Oil and Gas, LLC ("McCamey") holding the remaining one-half undivided interest.

## Procedural History

In March of 2018, the parties filed competing motions for summary judgment. The court heard oral arguments on the motions on May 11, 2018, and, by order entered July 31, 2018, granted summary judgment in favor of respondent. It is from the circuit court's July 31, 2018, order awarding summary judgment to respondent that petitioners now appeal.

## Standard of Review

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In syllabus point 4 of *Painter*, we held that

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

With these precepts in mind, we examine the case before us.

## Discussion

On appeal, petitioners allege eight assignments of error, some of which are overlapping and duplicative. Four of the assignments, numbers 1, 4, 5, and 6, relate to the powers Trustee West was afforded under the Cox Will. In those assignments of error, petitioners generally contend that the circuit court erred in its interpretation of Trustee West's powers and in upholding the actions of Trustee West in direct contravention to the express terms of the Cox Will – namely that Trustee West did not expressly reserve the mineral rights to the forty-acre tract before transferring the forty-acre tract in the West-Fulmer Deed.

In assignment of error number two, petitioners contend that the circuit court erred in finding that petitioners' claims were time barred by the doctrine of laches. In assignment of error number three, petitioners argue that the court erred in finding that respondent acquired title to the forty-acre tract by virtue of adverse possession. Petitioners assert, in assignment of error number seven, that the circuit court erred in finding that the West-Fulmer Deed did not reserve the oil, gas, and mineral rights of the forty-acre tract. Lastly, in assignment of error number eight, petitioners contend that the court abused its discretion in awarding respondent "any and all costs taxable by statute" in the absence of bad faith or wanton or willful conduct.

Given that a determination of whether petitioners' claims are time barred is dispositive, we address that argument first. Here, petitioners challenge the propriety of the circuit court's ruling that petitioners' claims are barred by the doctrine of laches. The doctrine of laches has been long recognized by this Court. In syllabus point 2, in part, *Carter v. Price*, 85 W. Va. 744, 102 S.E. 685 (1920), laches was identified as the "delay in the assertion of a claim which works disadvantage to another, and where it appears that by reason of such delay the adverse party would be injuriously affected . . . ." In *Bryan H. v. Kersten H.*, No. 17-0887, 2018 WL 6015817, *3 (W.Va. Nov. 16, 2018)(memorandum decision), we discussed the doctrine of laches and, citing syllabus point 3 of *Carter*, noted that laches is applicable

> "[w]here a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." *Carter v. Price*, 85 W.Va. 744, 102 S.E. 685 (1920), Syllabus Point 3.

Below, the circuit court determined that the Cox Will alone was insufficient, as a matter of law, to convey title to any personal or real property to William H. Williamson or his heirs or assigns. Rather, legal title to all real and personal property owned by Cedora Cox at the time of her death was delegated to Trustee West. As Trustee West was the legal owner of all real and personal property, "any persons claiming to be successors in interest to [William H. Williamson] must have obtained their interest in property by conveyance from [Trustee West]." *See Pan Coal Co. v. Garland Pocahontas Coal Co.*, 97 W. Va. 368, 125 S.E. 226 (1924), and *Atkinson v. Washington & Jefferson College*, 54 W. Va. 32, 46 S.E. 253 (1903). At no time from January 21, 1910, until the death of Trustee West was there any conveyance from Trustee West to William H. Williamson or his heirs. Thus, petitioners had no claim to title of the forty-acre tract.

The court reasoned, and we concur, that even if Trustee West violated the language in the Cox Will in not reserving the mineral rights in the forty-acre tract and then transferring the same to William H. Williamson or his heirs or assigns upon the death of Adaline Cox, that the expiration of over 100 years from that conveyance mandated the application of the doctrine of laches to preclude any claim by the petitioners. While the heirs of William H. Williamson may have had a claim against Trustee West, any such claim would have accrued on the date of Adaline Cox's death in 1912. It was not until November of 2016, more than 104 years after the death of Adaline Cox, that petitioners filed their underlying claims. With such delay, and the corresponding prejudice that would inure to respondent, we find no error in the circuit court's award of summary judgment to respondent on the basis of the application of the doctrine of laches. As we concur with the circuit court's determination that petitioners' claims are time barred, we decline to address petitioners' other substantive arguments.

5

In their final assignment of error, petitioners contend the circuit court abused its discretion in awarding respondent his "costs taxable by statute," as there was an absence of a showing of bad faith or wanton or willful conduct. This Court has held that

> """"the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, [sic] and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)].' Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993)." Syllabus point 2, *Daily Gazette Co., Inc. v. West Virginia Development Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999).

Syl. Pt. 3, *Pauley v. Gilbert*, 206 W. Va. 114, 522 S.E.2d 208 (1999).

As this Court reasoned in *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 50, 365 S.E.2d 246, 248 (1986), "[c]osts were unknown at common law. They are created and provided for by statute and may be imposed, recovered or collected only as authorized by statute." West Virginia Code § 59-2-8, provides, in pertinent part, that: ". . . the party for whom final judgment is given in any action, . . . shall recover his costs against the opposite party . . . ." Because the term "shall" is generally afforded a mandatory connotation (*see* Syl. Pt. 1, *Nelson v. W. Va. Pub. Employees Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982)) and because it is indisputable that the circuit court found in favor of respondent, we find that the circuit court did not abuse its discretion in awarding respondent his costs.

For the foregoing reasons, we affirm the circuit court's July 31, 2018, order.

Affirmed.

**ISSUED:** February 24, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison