472 S.E.2d 815

**STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, CHILD ADVOCATE OFFICE, ON BEHALF OF JASON GAVIN S. BY DIANN E.S., Plaintiff Below, Appellant,**

v.

**CARL LEE H., Defendant Below, Appellee.**

No. 23108.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided June 14, 1996.

---

4. *See* note 1 for a discussion of waived objections.

5. *See* note 2 for the text of Defendant's Instruction No. 5.

6. *See* note 2 for text of Plaintiff's Instruction No. 8.

R. Jeffrey Johnson, Ilene S. Schnall, West Virginia Department of Health and Human Resources, Child Support Enforcement Division, Charleston, for Appellant.

Scott Evans, Holroyd & Yost, Charleston, for Appellee.

Maureen Conley, Charleston, Amicus Curiae, for National Organization for Women, West Virginia Chapter.

McHUGH, Chief Justice.

The West Virginia Department of Health and Human Resources (hereinafter the "WVDHHR") appeals the March 21, 1995 order of the Circuit Court of Kanawha County which reversed the June 8, 1994 order of the family law master. More specifically, the family law master had ordered that a judgment in the amount of $79,687.52, plus interest, be granted against Carl L. H.[1] (hereinafter "Carl") for reimbursement child support. The circuit court reversed the order, holding that the doctrine of laches prevented Diann S. (hereinafter "Diann") from collecting reimbursement child support from Carl. For reasons explained below, we reverse the March 21, 1995 order of the circuit court.

I

Unless stated otherwise, the factual background comes from the family law master's findings of fact and from testimony given at a January 13, 1994 proceeding before the family law master. On February 11, 1979, Diann gave birth to a child named Jason S. (hereinafter "Jason"). On June 24, 1993, it was determined, pursuant to a blood test, that Carl was the father of Jason. The events prior to and after Jason's birth are important in determining whether laches applies so as to prevent Diann from collecting reimbursement child support from Carl.

Sometime in the spring of 1978 Diann ended her relationship with Alvin M. (hereinafter "Alvin"), whom she had been dating. Soon thereafter, in May of 1978, Diann went to a party hosted by her friends, Bernie S. and his wife. Carl was also at this party. During the course of the evening, Diann became intoxicated, so Bernie and his wife took Diann to a guest bedroom to sleep off the effects of the alcohol. Diann testified that later Carl entered the bedroom and that she told him to leave her alone. She further testified that she did not remember anything else after telling Carl to leave. Bernie testified in a deposition that he saw Carl go into the bedroom where he and his wife had placed Diann.

The next morning upon waking, Diann discovered that her underwear was on the floor. She became alarmed and asked Bernie to ask Carl if anything had happened between her

---

1. Because this case involves sensitive matters, we follow our traditional practice of using only the initials of the parties' last names. *See State v.* *Michael S.,* 188 W.Va. 229, 230 n. 1, 423 S.E.2d 632, 633 n. 1 (1992) (citation omitted).

and Carl. Bernie spoke with Carl and stated that Carl told him that nothing had occurred. Bernie reported Carl's response to Diann.

A couple of weeks after the party Diann saw Carl and asked him whether anything had occurred on the night of the party while she was in the bedroom. She stated that Carl informed her that nothing had occurred. Carl testified that he does not recall this conversation taking place.

Soon thereafter, Diann discovered that she was pregnant, and she eventually gave birth to Jason on February 11, 1979. In April of 1979 Diann instituted a paternity suit against Alvin, the only man with whom she knew she had sexual relations during the time Jason was conceived. However, the suit was dismissed after the blood test results revealed that Alvin was not Jason's father. In or about 1985, Diann brought a second paternity action against Alvin, and again, the blood test results revealed that Alvin was not Jason's father.

Thus, in 1987 Diann went to the Child Advocate Office in Boone County seeking to bring a paternity action against Carl.[2] The Child Advocate Office declined to pursue the action at that time. Almost five years later, in February of 1992, Diann went to the Child Advocate Office in Charleston again seeking to pursue a paternity action against Carl.[3] The action was filed, and it was determined that Carl was Jason's father.

The family law master ordered Carl to pay $381.74 per month in child support, which he has been paying. The family law master also ordered Carl to pay $79,687.52, plus interest, in reimbursement child support after finding that "[Diann] upon pursuing the matter of paternity against [Carl] acted timely and diligently ..." and is without negligence. Furthermore, the family law master found that

Carl was "not entitled to the benefits of the doctrine of latches [sic], as he misrepresented the facts to [Diann]."

The circuit court rejected the family law master's Recommended Order of reimbursement child support upon finding that the doctrine of laches barred Diann's claim for such support:

> [I]t has been fourteen (14) years since [Diann's] child was born and the time she filed suit against [Carl], and, whereas, [Diann] failed to file suit within a reasonable period of time even though she admits knowledge that suggests that she and [Carl] had sexual intercourse, this Court finds that [Diann] had knowledge that [Carl] might have been the father of her child and, yet, did not file suit against [him] for fourteen (14) years.

It is this conclusion of the circuit court that the WVDHHR appeals.

## II

■■■ The issue before us is whether the circuit court correctly set aside the family law master's determination that laches did not bar Diann from collecting reimbursement child support from Carl. In syllabus points 1, 3 and 4 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995) this Court outlined the standard of review the circuit court should use when reviewing a recommended order of a family law master:

> 1. A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.
>
> 3. Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are

---

2. The family law master stated that Diann filed this action in 1989 in its findings of fact; however, it appears that this was a typographical error in that the testimony at the January 13, 1994 proceeding indicates that the date was 1987. The circuit court substituted 1989 with 1987 in its findings of fact, and we likewise will follow suit.

3. The family law master in its findings of fact indicated that Diann approached the Child Advo-

cate Office a second time in 1993. The circuit court changed this date to 1992. We assume this change was made because of testimony which indicated that almost five years after Diann first went to the Child Advocate Office in 1987, she returned to the Child Advocate Office. In any event, the discrepancy in the dates is not significant enough to change the analysis which follows.

supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences.

4. If a circuit court believes a family law master failed to make findings of fact essential to the proper resolution of a legal question, it should remand the case to the family law master to make those findings. If it is of the view that the findings of fact of a family law master were clearly erroneous, the circuit court may set those findings aside on that basis. If it believes the findings of fact of the family law master are unassailable, but the proper rule of law was misapplied to those findings, the circuit court may reverse. However, a circuit court may not substitute its own findings of fact for those of a family law master merely because it disagrees with those findings.

The issue before us is whether the family law master's finding that laches did not apply because of Carl's misrepresentations is clearly erroneous or whether the circuit court substituted its own findings of facts merely because it disagreed with the family law master. The former is within the circuit court's reviewing powers, the latter, however, is not.

■ A child's custodial parent has a right to collect reimbursement child support in a paternity proceeding. *See* syl. pt. 2, *Kathy L.B. v. Patrick J.B., Jr.*, 179 W.Va. 655, 371 S.E.2d 583 (1988).[4] *See also* syl. pt. 3, *Department of Health and Human Resources v. Robert Morris N.*, 195 W.Va. 759, 466 S.E.2d 827 (1995). This right of reimbursement, however, is subject to the doctrine of laches. Syl. pt. 2, *Kathy L.B., supra* and syl. pt. 3, *Robert Morris N., supra.*

■ Laches is an equitable defense, and its application depends upon the particular facts of each case. *Hartley v. Ungvari*, 173 W.Va. 583, 587, 318 S.E.2d 634, 638 (1984). There are some general principles, however, which a court should be mindful of

when determining whether the doctrine of laches is applicable. For instance, " '[m]ere delay will not bar relief in equity on the ground of laches. "Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." ' Syllabus point 2, *Bank of Marlinton v. McLaughlin*, 123 W.Va. 608, 17 S.E.2d 213 (1941)." Syl. pt. 1, *State ex rel. Smith v. Abbot*, 187 W.Va. 261, 418 S.E.2d 575 (1992). *See also* syl. pt. 4, *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982). Furthermore, we have held that

'[w]here a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Syllabus Point 3, *Carter v. Price*, 85 W.Va. 744, 102 S.E. 685 (1920); Syllabus Point 2, *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980).

Syl. pt. 5, *Laurie, supra. See also* syl. pt. 2, *Hartley, supra.*

Carl argues that the application of the above principles governing laches bars Diann from collecting reimbursement child support. Carl primarily relies upon *Hartley, supra.* In *Hartley*, the custodial parent, the mother, obtained a divorce from the father upon constructive service of process. Because the circuit court did not have personal jurisdiction over the father when the divorce was obtained, the circuit court reserved jurisdiction to award child support in the event

---

4. Syllabus point 2 of *Kathy L.B., supra,* states:

Upon judicial determination of paternity, the paternal parent shall be required to support his child under W.Va.Code, 48A–6–4 (1986), and may also be liable for reimbursement support from the date of birth of the child. The right of reimbursement support on behalf of the custodian of the child is subject to the doctrine of laches.

personal jurisdiction was later acquired over the father. Nine years later the circuit court obtained personal jurisdiction over the father and awarded the mother reimbursement child support.

On appeal the father argued that the doctrine of laches barred the mother from collecting reimbursement child support. This Court agreed with the father, stating that the evidence indicated that not only did the father give the mother funds for child support after the divorce, but he also frequently came to West Virginia to visit the child during the nine years after the divorce. This Court concluded that because the mother knew of the father's visits and could have obtained personal jurisdiction over the father on numerous previous occasions, laches barred the mother from obtaining reimbursement child support nine years later.

Conversely, Diann argues that *Hartley*, *supra* is distinguishable from the case now before us because the reason for her fourteen-year delay was that Carl misrepresented crucial facts which prevented her from knowing that he was the father. Diann maintains that she did not knowingly sit on her rights, but was instead led to believe that she had no rights against Carl. In that we find Diann's argument to be persuasive, we now examine whether a person's misrepresentations will bar him or her from raising the defense of laches.

■ Generally, the reason for the delay in bringing an action must be considered before applying laches. *See* 30A C.J.S. *Equity* § 140 (1992). One reason for delay which has been found to prevent the application of laches is when the defendant's misrepresentations or concealment prevent the plaintiff from being aware of facts which would enable the plaintiff to proceed with a cause of action. *See* 30A C.J.S. *Equity* § 151 (1992). As the Supreme Court of Arkansas has succinctly stated: "Delay in commencing action is excusable where it was induced by the adverse party. No one can take advantage of a delay which he himself has caused or to which he has contributed, especially where actual hindrance has been caused by his fraud or concealment." *City National Bank v. Sternberg*, 195 Ark. 503, 114 S.W.2d

39, 44, *cert. denied*, 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391 (1938) (citation omitted). *See also Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584–85, 90 L.Ed. 743, 747 (1946) ("[F]raudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time."); *Salsbury v. Ware*, 183 Ill. 505, 56 N.E. 149 (1899) (Laches does not apply when the plaintiff failed to act on suspicions that an action may lie after an explanation was given which "lulled to sleep" his suspicions); *Hansel v. Hansel*, 300 Pa.Super. 548, 446 A.2d 1294, 1299 (1982) ("Concealment or deceit tolls the application of the doctrine of laches." (citation omitted)).

■ Accordingly, we hold that if the reason a plaintiff delays in bringing an action for reimbursement child support is because he or she was misled by the misrepresentations of the defendant as to his or her rights to bring such action or because the delay was induced by the defendant, then the defendant may not raise the defense of laches. However, if the plaintiff does not use due diligence in bringing an action once he or she learns of the misrepresentations, then the defendant may raise the defense of laches, provided the defendant can also demonstrate that such delay has worked to his or her detriment.

■ In the case before us, the family law master applied the correct law when determining whether Carl's misrepresentations prevented Diann from bringing the action for reimbursement child support in a timely fashion. Furthermore, the family law master specifically found in its findings of facts that "[Diann] is without negligence [in delaying to bring the action against Carl] and is [, therefore,] entitled to a claim for reimbursement child support in as much as Defendant Carl misrepresented the facts to [Diann] causing the delay in prosecution of this matter." Our examination of the record reveals that there was substantial evidence to support the above finding of the family law master. For example, the record reveals that soon after the party, Bernie S., the host of the party, asked Carl whether he had sexual relations with Diann. Carl told Bernie no. Further-

more, there was evidence indicating that Diann asked Carl whether anything had occurred on the night of the party, and Carl assured her that it had not. Therefore, the family law master's finding that Carl's misrepresentation caused Diann's delay was not clearly erroneous.

As we previously stated, the circuit court may not set aside a family law master's findings of fact unless it finds the findings of fact to be clearly erroneous. *See* syl. pts. 1, 3 and 4, *Stephen L.H.*, *supra.* In the case before us, the circuit court has failed to explain how it finds the family law master's findings of fact to be clearly erroneous. Therefore, the circuit court erred in reversing the family law master's finding that laches did not bar Diann from collecting reimbursement child support from Carl. Accordingly, we reverse the March 21, 1995 order of the Circuit Court of Kanawha County.

Reversed.