IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0892

_____

**FILED**

**November 13, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CAROL KINSINGER,
Respondent Below, Petitioner

v.

TODD PETHEL,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Mason County
The Honorable David W. Nibert, Judge
Civil Action No. 05-D-110

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____

Submitted: October 14, 2014
Filed: November 13, 2014

Bruce Perrone, Esq.                     Todd Pethel, Respondent
Sherrone Hornbuckle, Esq.               *No Appearance*
Hoyt Glazer, Esq.
Legal Aid of West Virginia, Inc.
Huntington, West Virginia
Counsel for Petitioner

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE KETCHUM concurs, in part, and dissents, in part, and reserves the right to file a separate Opinion.

SYLLABUS BY THE COURT

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt. 1, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2. "In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review." Syl. Pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

3. "Delay alone does not constitute laches; it is delay which places another at a disadvantage." Syl. Pt. 3, *Carter v. Carter*, 107 W. Va. 394, 148 S.E.2d 378 (1928).

4. "Mere delay will not bar relief in equity on the ground of laches." Syl. Pt. 4, *State ex rel. DHHR v. Carl Lee H.*, 196 W. Va. 369, 472 S.E.2d 815 (1996).

5. "The general rule in equity is that mere lapse of time, unaccompanied by circumstances which create a presumption that the right has been abandoned, does not constitute laches." Syl. Pt. 4, *Laurie v. Thomas*, 170 W. Va. 276, 294 S.E.2d 78 (1982).

Benjamin, Justice:

The instant case is before the Court upon the appeal of Petitioner, Carol Kinsinger, from a July 30, 2013, order of the Circuit Court of Mason County denying her petition for appeal of a final order of the family court which declined to find Respondent, Todd Pethel, in contempt of a qualified domestic relations order (hereinafter "QDRO"). Herein, Petitioner argues that 1) the circuit court erred in applying the doctrine of laches below because there was no finding or evidence of prejudice to Respondent caused by the passage of time; and 2) the failure of a QDRO to obtain full payment does not thereby extinguish the underlying award of equitable distribution of property rights. Upon review of the Petitioner's arguments,[1] the record before us on appeal, and applicable legal precedent, we affirm the circuit court's finding that Respondent was not in contempt of the QDRO, but we reverse the circuit court's finding that Petitioner was barred from obtaining her share of Respondent's retirement benefits pursuant to the doctrine of laches. We therefore remand this matter to the circuit court for entry of a judgment order awarding Petitioner the remainder of the $4,081.51 to which she is entitled under the settlement agreement.

---

[1] The Respondent, Todd Pethel, has not entered an appearance or filed a responsive brief in this appeal.

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

The parties to this action were divorced by a final order entered on January 27, 2006. A settlement agreement prepared by Respondent's attorney was incorporated by reference into the final order. The settlement agreement specified in paragraph five that

> [Petitioner] is entitled to 1/2 the marital portion of the Thrift Savings Plan (TSP) - that is the portion that was contributed between October 6, 2001 and April 26, 2005. If she chooses to receive this money, then she shall be responsible for preparing the Qualified Order to receive the same.

Six years later, Petitioner prepared and filed a QDRO on January 4, 2012. On that date, the family court entered a Retirement Benefits Order requiring that Petitioner be paid fifty percent (50%) of the portion of Respondent's TSP that was contributed while the parties were married and living together, specifically, from October 6, 2001, until April 26, 2005. Respondent did not appeal the QDRO.

Unbeknownst to Petitioner, in 2009, Respondent had withdrawn all funds from the TSP (totaling $15,297.19), including the Petitioner's half of the marital portion referenced in the settlement agreement as incorporated in the family court's January 27, 2006, final order. Respondent's withdrawal of the TSP funds took place three years after entry of the divorce order and three years prior to Petitioner's drafting of the QDRO and the family court's entry of the QDRO. Thus, at the time the QDRO was filed, there were no funds remaining in the original TSP from which the QDRO could be satisfied.

Immediately prior to Petitioner's drafting of the QDRO, however, in December 2011, Respondent opened a new TSP. From this new TSP, a payment of $780.58 was made to Petitioner on May 8, 2012, pursuant to the January 4, 2012 Retirement Benefits Order. This payment represented only a portion of the amount of benefits to which Petitioner was entitled from the original TSP. According to later calculations by the TSP Plan Administrator, Petitioner's share of the original TSP based on the dates of marriage noted in the settlement agreement was determined to be $4,081.51. Upon realizing that the remaining sum of $3,300.93 was not available to her from the new TSP, Petitioner filed a Petition for Contempt of the Retirement Benefits Order on November 5, 2012, in order to compel Respondent to pay the remaining sum to which Petitioner alleged she was entitled pursuant to the divorce settlement agreement and the original January 27, 2006, final order. The family court held a hearing on the contempt petition on May 6, 2013, and heard the testimony of both parties and examined the documents submitted by the parties concerning the TSP.

In an order dated June 7, 2013, the family court declined to find Respondent in Contempt, finding that the Petitioner, having had an affirmative duty to cause a QDRO to be entered if she wished the money to be received from the TSP account, failed to timely file her QDRO. It was this failure by the Petitioner, the family court reasoned, that then later caused her to be unable to receive her money. Thereafter, Petitioner appealed the family court's June 7, 2013, order to the Circuit Court of Mason

3

County asserting that the family court abused its discretion when it (1) subjected terms of a stipulation of settlement to a statute of limitations, (2) found Respondent's delay in filing a QDRO was evidence of an intent to waive her rights, and (3) did not give fair meaning to language to properly effect the understanding of the parties.

In an order dated July 30, 2013, the circuit court affirmed the June 7, 2013, order of the family court, finding no abuse of discretion in the family court's findings that Petitioner failed to timely satisfy the condition of the agreement and therefore forfeited her share of the TSP. In response to Petitioner's argument that the family court applied a statute of limitations contrary to West Virginia law, the circuit court interpreted the family court ruling as an application of the doctrine of laches. The circuit court stated, in part,

> This Court interprets the family court's findings as an application of the laches doctrine by which "a delay in the assertion of a known right works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." *Grose v. Grose*, 222 W. Va. 722, 728 (2008) (internal citations omitted). Accordingly, "[l]aches is an equitable remedy which places the burden on the person asserting it to prove both lack of diligence by the party causing the delay and prejudice to the party asserting it." *Id*. Both of these factors were demonstrated in the present case.
>
> In *Grose* [*v. Grose*, 222 W.Va. 722 (2008)], the West Virginia Supreme Court of Appeals found no error in the application of the laches doctrine in divorce proceedings regarding retirement benefits and date of entry of a QDRO under the facts presented therein. *Id*. In *Grose*, the final order on equitable distribution placed no duty of notification on the husband recipient of retirement benefits and the wife made no

4

claim that she was misled or unable to make an earlier inquiry as to the husband's receipt of benefits. *Id*. In the present case, the settlement agreement placed no duty to notify on the Appellee/Petitioner, but rather placed an affirmative duty on the Appellant/Respondent to cause a QDRO to be entered if she wished to receive a share of the marital portion of the TSP account. The Appellant/Respondent failed to timely satisfy the condition of the settlement agreement and has made no allegation that she was misled or unable to fulfill her duty. As a result thereof, this Court finds no abuse of discretion in the family court's findings that: (1) the Appellant/Respondent does not have an absolute right to a share of the TSP account, (2) the Appellant/Respondent failed to timely satisfy the condition of the agreement, and (3) the Appellee/Petitioner is not required to pay further sums to the Appellant/Respondent.

As to ground three in the petition for appeal, this Court finds the family court's finding that the settlement agreement imposed an affirmative duty on the Appellant/Respondent was not an abuse of discretion. The Appellant/Respondent argues that the family court did not use language giving fair meaning to the understanding of the parties. This Court disagrees. The settlement agreement was clear and unambiguous, and the family court applied the plain meaning of the agreement, which made the Appellant/Respondent's receipt of her portion of the marital share of the TSP account conditional on her affirmative duty to cause a QDRO to be entered.

On appeal herein, Petitioner seeks reversal of the circuit court's application of the doctrine of laches, and of the order extinguishing any further obligation by Respondent for the agreed marital property distribution under the settlement agreement and final divorce order.

## II. STANDARD OF REVIEW

5

This Court's well-established standard of review of domestic relations proceedings was set forth in the syllabus of *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of the law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

*See also Mark V.H. v. Dolores J.M.,* 232 W. Va. 378, 752 S.E.2d 409 (2013).

Furthermore, as it pertains to civil contempt orders, this Court has stated,

> In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. Pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

# III. ANALYSIS

In her first assignment of error, Petitioner asserts that the circuit court's order is erroneous because there was no finding or evidence of prejudice to Respondent caused by the passage of time as required for application of the doctrine of laches under West Virginia law. The doctrine of laches is "an equity doctrine to the effect that unreasonable delay will bar a claim if the delay is a prejudice to the defendant." 1 Dan B. Dobbs, *Handbook on the Law of Remedies* § 2.4(4) (2d ed. 1993). Long ago the United States Supreme Court stated that "laches is not, like limitation, a mere matter of time; but

principally a question of the inequity of permitting the claim to be enforced, - an inequity founded upon some change in the condition or relations of the property or the parties." *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875 (1892). In 1929, this Court stated, "[d]elay alone does not constitute laches; it is delay which places another at a disadvantage." Syl. Pt. 3, *Carter v. Carter*, 107 W. Va. 394, 148 S.E.2d 378 (1929). Again in 1950, this Court recognized that "time alone is not now considered a controlling factor in the application of the doctrine." *Hoffman v. Wheeling Svgs. & Loan Ass'n*, 133 W. Va. 694, 707, 57 S.E.2d 725, 732 (1950).

This Court has affirmed the same understanding of the doctrine of laches on numerous occasions since *Hoffman*. *See, e.g. Grose v. Grose*, 222 W. Va. 722, 728, 671 S.E.2d 727, 733 (2008) ("Laches is an equitable remedy which places the burden on the person asserting it to prove both lack of diligence by the party causing the delay and prejudice to the party asserting it."); Syl. Pt. 4, *State ex rel. DHHR v. Carl Lee H.*, 196 W. Va. 369, 472 S.E.2d 815 (1996) ("Mere delay will not bar relief in equity on the ground of laches. 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'"); Syl. Pt. 4, *State ex rel. DHHR v. Robert Morris N.*, 195 W. Va. 759, 466 S.E.2d 827 (1995) (same); *Rodgers v. Rodgers*, 184 W. Va. 82, 89, 399 S.E.2d 664, 671 (1990) ("It is clear that delay itself in bringing the suit will not bar laches"); *Maynard v. Board of Educ.*, 178 W. Va. 53, 60, 357 S.E.2d 246, 253 (1987) ("[T]he controlling element of the equitable defense of laches is prejudice, rather than the amount of time

7

which has elapsed without asserting a known right or claim"); Syl. Pt. 4, *Laurie v. Thomas*, 170 W. Va. 276, 294 S.E.2d 78 (1982) ("The general rule in equity is that mere lapse of time, unaccompanied by circumstances which create a presumption that the right has been abandoned, does not constitute laches.").

In *Grose v. Grose*, 222 W. Va. 722, 671 S.E.2d 727, the Petitioner wife was awarded a share of the husband's retirement benefits pursuant to a 1990 equitable distribution order. The Respondent husband was then 49 years old, and would not qualify for full retirement benefits until reaching age 62. *Id*. at 725, 671 S.E.2d at 730. Shortly after the divorce proceedings, the Respondent husband was injured in a mining accident and began receiving monthly disability benefits from the same account. Sixteen years after the entry of the equitable distribution order (and three years after the Respondent husband turned 62), the Petitioner wife filed a petition seeking an accounting and a QDRO. *Id*. The Respondent husband having passed age 62 by the time of Petitioner's filing, it was uncertain whether the monthly benefit payments he was then-receiving from the account after age 62 should be treated as either "retirement" or "disability" benefits or some mix thereof. *Id*. This Court ultimately permitted the Petitioner wife to receive a share of the benefits paid on or after the date she filed her action. The sixteen-year

passage of time between the equitable distribution order and the QDRO did not bar her from submitting the QDRO and obtaining benefits. *Id*. at 728, 671 S.E.2d at 733.[2]

In the instant case, the courts below failed to make any finding of harm or prejudice to Respondent as required by our law to impose a laches bar. The family court order entered June 7, 2013, contains no finding or language identifying any harm, prejudice or disadvantage to Respondent accruing from Petitioner's delay in her submission of the QDRO. Of the seven findings of fact made by the family court below, none of them mention Respondent's circumstances. Rather, the focus of the order was entirely upon Petitioner's delay and her responsibility to prepare the QDRO if she chose to do so. Likewise, in the circuit court's order, there was no discussion of or identification of "disadvantage to another" or "prejudice to the party asserting" laches, as required by our prior decision in *Grose*, a case which was cited by the circuit court. For these reasons, we believe that the circuit court's finding that Petitioner forfeited her share of the TSP under the doctrine of laches is erroneous.[3] In reversing the circuit court's

---

[2] In *Grose*, this Court did, however, uphold the application of laches to bar the Petitioner wife from seeking a share of the monthly retirement benefits which had already been paid to the Respondent husband before the wife filed her request for QDRO. *Id*.

[3] Furthermore, the doctrine of laches is moot unless the affected party raises it as a defense. *See State Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 764, 466 S.E.2d 827, 832 (1995). The family court order did not discuss the doctrine of laches as the Respondent did not file any answer or motion raising the defense of laches in this particular case. Additionally, he never appealed the QDRO. That said, to the extent that a QDRO is the mechanism through which a settlement order in a divorce proceeding is achieved, it is vital that the parties and/or their counsel in these types of proceedings (continued . . .)

application of the laches defense, we find that the underlying equitable distribution obligation contained in the settlement agreement in the amount of $4,081.51 is unimpaired, and that the Petitioner is permitted to pursue any other judgment enforcement mechanism that may be available to her under the law for the amount still owed by Respondent.

Although we conclude that the circuit court's order must be reversed to the extent that Petitioner's underlying award of equitable distribution of property rights was not extinguished by application of the doctrine of laches, we cannot say that the circuit court's ruling affirming the family court's denial of Petitioner's Petition for Contempt was an abuse of discretion. The denial of Petitioner's Petition for Contempt was a discretionary ruling made by the family court. The family court considered the fact that Petitioner did not take any affirmative steps to obtain the money from the TSP in this case for six years. The family court felt that the Petitioner failed to act in a timely manner in filing the QDRO and thus, it found that Respondent was not in contempt of the Final Order of Divorce, which stated that "if she chooses to receive the money," she was required to file a QDRO. At the time of Respondent's withdrawal of funds, there was no QDRO in place. Given the passage of time before entry of the QDRO and the discretionary nature of the circuit court's ruling, we cannot say that said ruling was

ensure that the QDRO is entered in a timely manner to effectively preserve the parties' respective property rights.

10

erroneous.  Accordingly, we affirm the circuit court's denial of Petitioner's Petition for Contempt.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's finding that Respondent was not in contempt of the QDRO, but reverse the circuit court's finding that Petitioner was barred from obtaining her share of Respondent's retirement benefits pursuant to the doctrine of laches.  This matter is remanded to the circuit court for entry of a judgment order awarding Petitioner the remainder of the $4,081.51 to which she is entitled, with appropriate credit for that which she has already been paid, under the settlement agreement.[4]

Affirmed, in part, reversed, in part, and remanded.

---

[4] Although Petitioner has not sought pre-judgment interest in this case, she is entitled to seek post-judgment interest.