# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 8, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**HARLEY J. LEMASTERS**
**Respondent Below, Petitioner**

**vs.) No. 23-ICA-142**          (Fam. Ct. of Brooke Cnty. Case No. FC-05-2021-D-18)

**REBECCA K. LEMASTERS**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Harley J. LeMasters ("Husband") appeals from the March 27, 2023, final divorce order of the Family Court of Brooke County. Respondent Rebecca K. LeMasters ("Wife") filed a response and a cross-assignment of error.[1] Husband filed a reply. The issues raised on appeal relate to the family court's rulings regarding the equitable distribution of certain assets between the parties.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure. For the reasons stated below, this case is affirmed, in part, and remanded, in part.

Husband and Wife were married on October 5, 2004. The parties stipulated that they last cohabitated together on July 4, 2013. It was at this time that Wife left the marital home and returned to her own premarital residence. Wife filed for divorce on February 26, 2021, citing the grounds of irreconcilable differences, living separate and apart, and mental cruelty. On March 17, 2021, Husband filed his answer, which denied irreconcilable differences and mental cruelty, but admitted living separate and apart. Husband also raised the affirmative defense of abandonment. The family court held a final hearing on August 12, 2022, and August 30, 2022.

Through their testimony, the parties acknowledged that after July 4, 2013, they continued to spend significant time together and were working on their relationship. They also continued to maintain at least one joint bank account and file joint tax returns.

---

[1] Husband is represented Paul J. Harris, Esq., and Wife is represented by Sharon N. Bogarad, Esq.

1

Essentially, the parties testified that they continued all aspects of their relationship except for being sexually intimate and sleeping under the same roof. Wife testified that she left the home on July 4, 2013, following a disagreement with Husband; that she did not take any of her personal belongings; had not intended to divorce or separate; and that she left because she needed time to "clear her head." Wife testified that she ultimately filed for divorce after it became apparent that certain issues in the marriage would never be resolved.

Husband has amassed several million dollars in cash, stocks, property, and oil/gas royalties. Husband testified that his wealth was garnered through investments he made from inheritances that he received from his parents and upon the death of his first wife, in addition to proceeds he received from a lawsuit settlement in the 1970s or 1980s. Husband claims that most assets are separate property, and that during the marriage any income he had was from premarital assets. Husband testified that he did not preserve any financial documentation to substantiate any values of his assets.

Key to this appeal are multiple Ameritrade and IMA investment accounts. Husband testified that he did not have any knowledge of where all the money came from that he deposited into his Ameritrade account where he traded stocks regularly and made substantial profits during the marriage. Husband also stated that among his assets were three IMA accounts, but he could not recall if these accounts were opened prior to the marriage. However, Husband argued that the doctrine of laches should apply because Wife waited eight years to file for divorce, making any proceeds obtained after Wife left the home on July 4, 2013, his separate property. Wife testified that she was unaware of the parties' wealth until she obtained the full tax returns in the divorce proceedings. Wife maintained that she never saw the complete tax returns during the marriage and was only given a couple of pages to sign by Husband. Specifically, she testified that Husband controlled the finances; that she was aware Husband traded stocks but that he had told her there was no value due to a down market; and that she had no knowledge of Husband's various CDs, IRAs, and other investment accounts.

In its fifty-nine-page order, the family court made several findings. First, the family court found that the parties were entitled to a divorce on the grounds that they have lived separate and apart for more than one year. *See* W. Va. Code § 48-5-202(a) (2001). While Husband raised the affirmative defense of abandonment, the family court's order made no specific findings regarding that defense. It was determined that through the uncontroverted testimony of the parties, they continued to hold themselves out as husband and wife for eight years, which included the use of at least one joint checking account and filing joint tax returns. Therefore, the family court determined that for the purposes of equitable distribution, the date Wife filed for divorce, February 26, 2021, was the most appropriate date for determining the value of the marital property. *See* W. Va. Code § 48-7-104(1) (2001). On this issue, the family court found:

The Court FINDS that the uncontroverted testimony [is] that the parties have lived separately in their own residences since July 4, 2013. The testimony supports that the parties did not seriously contemplate divorce until the Petitioner filed the Petition for Divorce on February 26, 2021. The parties continued to "date," continued to consider themselves married, continued to file joint tax returns[,] and continued to attempt to repair their relationship from July 4, 2013[,] until the filing of this divorce action on February 26, 2021. The Court FINDS that the testimony supports that there was no significant change in the parties' financial dealings after they began to live in separate residences in 2013. The parties maintained joint accounts but predominately utilized only the account to which they added the name of their spouse after marriage. [Wife] subsisted on her own earnings and/or social security payments, and [Husband] subsisted on all other funds. The parties continued to jointly file their tax returns. The Court FINDS that the appropriate date of separation for purposes of valuation will be February 26, 2021, the date of the filing of the Petition for Divorce.

The family court's order briefly addressed Husband's laches defense. In response, the family court made the following finding:

The Court FINDS that the testimony supports that both parties continued to actively attempt to repair their relationship, albeit unsuccessfully. Both parties had an equal ability to file for separation or divorce. The Court finds that [Wife] was largely unaware of the assets or monthly income that is the subject of these proceedings. The Court FINDS that [Husband] has failed to prove a lack of diligence on behalf of [Wife] in filing her action for divorce.

With regards to equitable distribution, the family court found that the Ameritrade and IMA accounts were marital property. Regarding the Ameritrade accounts, the family court determined that at least one of the accounts was created prior to the marriage with an initial investment of $55,000 and subsequent investments of $270,000 during the term of the marriage. Husband could not recall where the money that he deposited into the Ameritrade accounts came from, but believed it came from multiple sources, including oil and gas proceeds that were paid to the joint name of the parties. The family court further found that it was undisputed that Husband utilized his time and energy during the marriage trading stocks, which increased the value of the Ameritrade accounts from the principal investment of $325,000 to $2,193,693.68. It was determined that the $55,000 premarital investment constituted 16.92% of the total principal investment. Thus, for the purpose of equitable distribution, the family court reduced the total Ameritrade value by 16.92% and designated the resulting $371,172.91 as a premarital asset of Husband with the remaining $1,822,520.77 being deemed marital property.

3

As to the IMA accounts, the family court found Husband could not recall if the accounts were established prior to the parties' marriage. While the family court's order listed all these accounts as marital property, in its division of the parties' marital assets, the order does not provide for division of the IMA accounts between the parties. The family court entered its final order on March 27, 2023, and this appeal followed. We apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."

Syl., *Carr v. Hancock*, 216 W. Va. 474, 475, 607 S.E.2d 803, 804 (2004). *Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of a family court order). On appeal, Husband raises four assignments of error, and Wife raises a single cross-assignment of error. We will address these in turn.

First, Husband assigns error to the family court's classification of the Ameritrade accounts as marital property. Discussing the Ameritrade accounts, the family court found:[2]

> The Court FINDS that the Ameritrade Account was created just prior to the parties' marriage with an initial premarital investment of $55,000.00 and a subsequent investment of $270,000.00 during the term of the marriage. [Husband] could not state specifically where the money came from that he deposited into the Ameritrade account, but believed it came from multiple sources, including oil and gas proceeds that were paid into the joint name of the parties. The testimony supports that the increase in value of the Ameritrade account was not passive appreciation. [Husband] would trade stocks regularly during the term of the marriage and through his efforts the Ameritrade accounts now have a combined value of $2,193,693.68. It is uncontroverted that [Husband] utilized his time and energy during the marriage to increase the value of this account from its principal investment of $325,000.00.

Husband argues that because the accounts were first funded prior to the marriage, the Ameritrade accounts are separate property. "The party seeking to exclude property from the marital estate that is presumptively marital property, has the burden of persuasion on that issue." Syl. Pt. 4, in part, *Mayhew v. Mayhew*, 205 W. Va. 490, 493, 519 S.E.2d 188,

---

[2] This finding refers to the Ameritrade account in singular form; however, the family courts order lists multiple Ameritrade accounts, each with a separate account number. Thus, we will refer to these accounts in plural form.

191 (1999). As evidenced by the record, Husband failed to offer proof that the Ameritrade accounts were separate property. The evidence shows Husband did not keep financial records and could not recall the specific source of funding for the Ameritrade accounts. Instead, the evidence established that albeit for the initial investment prior to the parties' marriage, the Ameritrade account was subsequently funded from proceeds earned from various investments, which included marital accounts.

As our Supreme Court of Appeals has stated:

[W]ith regard to the family court's factual findings that underlie its equitable distribution order, this Court will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous[.] A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the [family] court's account of the evidence is plausible in light of the record viewed in its entirety. It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations. Even where testimony is uncontroverted, a fact-finder is free to disregard such testimony if it finds the evidence self-serving, and not credible.

*Mulugeta v. Misailidis*, 239 W. Va. 404, 408-09, 801 S.E.2d 282, 286–87 (2017) (citations and quotations omitted). Here, we find the family court's rulings with respect to Husband's testimony and its ultimate equitable distribution of the Ameritrade accounts to be reasonable considering the entire record. Accordingly, we decline to disturb the family court's determinations on this issue.

Next, Husband contends that the family court erred by using February 26, 2021, the date Wife filed for divorce, as the date of the parties' separation for the purposes of equitable distribution. It is Husband's position that the family court was required to use July 4, 2013, the date the parties stipulated that they last cohabited together. We are not persuaded by Husband's argument. When determining the value of marital property, West Virginia Code § 48-7-104 (2001) states, in part:

After considering the factors set forth in [West Virginia Code § 48-7-103], the court shall: (1) Determine the net value of all marital property of the parties as of the date of the separation of the parties *or as of such later date determined by the court to be more appropriate for attaining an equitable result.*

5

(emphasis added).

The family court determined that while the parties had lived separately since July 4, 2013, the facts of this case supported a finding that February 26, 2021, was the more appropriate date of separation for equitable distribution. Specifically, the family court found that because the parties continued their relationship for nearly eight years after their separation, neither party had seriously contemplated a divorce prior to its filing, and therefore, February 26, 2021, should control for the purposes of equitable distribution. Upon review, we find that under the facts of this case, the family court did not err or abuse its discretion in its application of West Virginia Code § 48-7-104, and that its imposition of a separation date of February 26, 2021, for the purposes of equitable distribution is supported by the record.

As his third assignment of error, Husband avers that the family court erred by not applying the doctrine of laches to find that the assets accumulated after July 4, 2013, were his separate property. He also argues that the family court failed to fully address his laches argument in its final order. "Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." Syl. Pt. 2, *Bank of Marlinton v. McLaughlin*, 123 W. Va. 608, 17 S.E.2d 213 (1941). In *Carter v. Price*, 85 W. Va. 744, 102 S.E. 685 (1920), our Supreme Court of Appeals stated:

> Where a party knows his rights or is cognizant of his interest in a particular subject–matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject–matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.

*Id*. at 744, 102 S.E. at 686, syl.

Here, Husband argues that he was irreparably harmed when Wife waited eight years to file for divorce because the lapse of time caused many of his financial documents to become unavailable, and that Wife's unreasonable delay deprived him of substantial assets that the family court erroneously found to be marital property. We are unpersuaded by Husband's argument for two reasons.

6

First, the doctrine of laches is an affirmative defense. However, we find that the only affirmative defense raised by Husband's answer was abandonment.[3] West Virginia Code § 48-5-403(a) (2001) sets forth that answers filed in divorce proceedings are governed by the West Virginia Rules of Civil Procedure. In that respect, Rule 8(c) of the West Virginia Rules of Civil Procedure requires: "In pleading to a preceding pleading, party *shall set forth affirmatively* accord and satisfaction . . . *laches* . . . and any other . . . affirmative defense." (emphasis added). Moreover, the doctrine of laches is moot unless the affected party raises it as a defense. *See State Dep't. of Health v. Robert Morris N.,* 195 W. Va. 759, 764, 466 S.E.2d 827, 832 (1995); *Kinsinger v. Pethel*, 234 W. Va. 463, 468 n.3, 766 S.E.2d 410, 415 n.3 (2014).

Because Husband did not properly raise the defense of laches in his answer or by separate motion, we find no error in the family court's decision to not apply his laches defense to the present case. Similarly, for these same reasons, we also find that the family court was not required to fully address the doctrine of laches in its final order.

Second, even if a laches defense had been properly raised, we conclude that the defense of laches is not available to Husband in this case as a matter of law. The elements of laches consist of (1) unreasonable delay and (2) prejudice. *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996) (citation omitted). As previously noted, Husband relies on the eight-year lapse of time between the parties' separation and Wife's filing for divorce to support his laches defense. However, our case law states:

> [T]he controlling element of the equitable defense of laches is prejudice, rather than the amount of time which has elapsed without asserting a known right or claim . . . . The general rule in equity is that mere lapse of time, unaccompanied by circumstances which create a presumption that the right has been abandoned, does not constitute laches.

*Kinsinger*, 234 W. Va. at 467, 766 S.E.2d at 414 (quotations and citations omitted).

We find that Husband cannot prove the element of prejudice based upon the facts of this case. As the family court observed, both parties had an equal opportunity to file for a divorce or legal separation at any time after the parties separated but did not do so. Instead, both parties spent nearly eight years trying to reconcile their marriage, and it is uncontroverted that Wife was unaware of Husband's wealth throughout both the marriage and the separation. Thus, we find the Husband has suffered no prejudice as a result of the delay between the parties' separation and Wife's filing for divorce.

---

[3] The family court's order does not state when Husband first raised the doctrine of laches as an affirmative defense. However, based upon our review of the record, the defense was not raised until the final hearing when Husband's counsel mentioned it in passing during a colloquy with the family court.

Moreover, the family court granted the divorce based upon the uncontested ground of living separate and apart for more than one year. This is significant because West Virginia Code § 48-5-403(c) (2001) sets forth that when a divorce is sought on that basis, "the affirmative defenses, including, but not limited to . . . *lapse of time*, shall not be raised." (emphasis added). Therefore, because Husband's laches argument is couched as a lapse of time defense, and because the parties' divorce was granted based upon living separate and apart, we find Husband's defense was foreclosed by statute. As such, we find no error and affirm the family court's ruling on this issue.

In his final assignment of error, Husband assigns error based upon the family court's failure to address his affirmative defense of abandonment in its final order. It is Husband's position that Wife abandoned the marriage when she left the marital home on July 4, 2013, and never returned. While the family court's final order is silent on this issue, when considering the facts of this case, we find such error to be harmless. *See State v. McIntosh*, 207 W. Va. 561, 577, 534 S.E.2d 757, 773 (2000) (citation omitted) ("Error in evidentiary ruling is 'harmless error' when it is trivial, formal, or merely academic, and not prejudicial to substantial rights of party assigning it, and where it in no way affects outcome of trial.") As previously established, the nature of the parties' continued relationship from July 4, 2013, until February 26, 2021, is uncontroverted. Therefore, because the parties maintained their marriage despite living separate and apart, we find the record cannot support a finding of abandonment. As such, we find the omission of a ruling on this issue in no way affects the other rulings made by the family court in its final order. Accordingly, we find no error.

The final issue before us is Wife's cross-assignment of error. Wife argues that the family court failed to allocate all the marital assets in its final order. Specifically, Wife maintains that while the family court correctly found that the three IMA accounts were marital property, its final order did not allocate the funds between the parties as required by statute. We agree. As our state's highest court has previously held:

> Equitable distribution [...] is a three-step process. The first step is to classify the parties' property as marital or non-marital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [W. Va. Code § 48-7-103].

Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 452-53, 396 S.E.2d 413, 414-15 (1990). The family court's order classified and valued the IMA accounts, but the order does not divide the assets between the parties. Therefore, we find that the family court failed to complete the third step of the equitable distribution process by not dividing the three IMA accounts between the parties in accordance with West Virginia Code 48-7-103 (2001).[4] As

---

[4] In his response to Wife's cross-assignment of error, Husband argues that the family court intended to treat the IMA accounts as separate property and that the family court

8

such, we find that remand is necessary for the limited purpose of the family court completing the equitable distribution as required by statute.[5]

Accordingly, we affirm, in part, and remand, in part, the family court's March 27, 2023, order. We affirm the family court with respect to all assignments of error raised by Husband, and we remand this matter to the family court on Wife's cross-assignment of error for the limited purpose of completing equitable distribution, consistent with this decision.

Affirmed, in part, and Remanded, in part.

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

mistakenly listed the IMA accounts among the marital property when they should have been listed as separate property with his IRA accounts because the IRA and IMA accounts are one in the same. The IMA and IRA accounts each have their own account numbers and values and the family court's final order makes separate detailed findings regarding these accounts. Moreover, Husband failed to raise this issue as an assignment of error. Therefore, we find no merit in his argument as it is unsupported by the record.

[5] Our review of the family court's final order also reveals that there is a "Premium MMA" listed as marital property. However, there is no express finding in the order classifying this asset as separate or marital property, but rather, the order merely mentions this account in passing. We further note that if it is marital property, this account has not been divided between the parties as required by statute. Although neither party raises this issue on appeal, on remand, we encourage the family court to clarify its ruling on this account for the benefit of the parties and the record.

9