# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JAMES SUMMERS,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-493**   (Fam. Ct. Monongalia Cnty. Case No. FC-31-2007-D-295)

**NANCY SUMMERS,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner James Summers ("Husband") appeals the Family Court of Monongalia County's November 15, 2024, order approving and adopting a Court Order Acceptable for Processing ("COAP"), which was filed approximately sixteen years after the parties' divorce. Respondent Nancy Summers ("Wife") responded in support of the family court's decision and included one cross-assignment of error.[1] Husband filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, the parties were married on March 18, 1989, and divorced by order entered September 3, 2008. Husband became employed by the Federal Bureau of Investigation ("FBI") beginning on July 10, 1994, while the parties were married, and was employed there during the family court proceedings.[2] The divorce order was entered on September 3, 2008, and included the following directives regarding Husband's retirement account(s):

---

[1] Husband is represented by James M. Cagle, Esq. Wife is represented by Alyson A. Dotson, Esq., and Michelle L. Bechtel, Esq.

[2] During his employment, Husband obtained retirement accounts in the form of a Thrift Savings Plan ("TSP") and a Federal Employees Retirement Systems ("FERS") account. Many retirement accounts are distributed in equitable distribution through a Qualified Domestic Relations Orders ("QDRO"), but federal accounts are distributed through a COAP.

1

There is an FBI TSP, which is the Respondent's [Husband's] through his employment. That is awarded to him, subject to a Qualified Domestic Relations Order to the Petitioner [Wife] awarding her one-half (1/2) of the amount allocated therein for the period of the marriage, which is March 18, 1989[,] through June 20, 2007.

There is a Federal FERS account, which is the Respondent's [Husband's] retirement plan through his employment. That is awarded to him subject to a Qualified Domestic Relations Order to the Petitioner [Wife] awarding her one-half (1/2) of the amount allocated therein for the period of the marriage, which is March 18, 1989[,] through June 20, 2007.

. . .

Counsel for both parties are to prepare Qualified Domestic Relations Orders accordingly. Both parties are under an obligation to complete any and all documents necessary to implement this distribution.

In the final divorce order, the parties were further directed to each pay half of the mortgage and home equity loan payments on the marital home until it could be sold, with proceeds to be split evenly. The final order also noted that Wife had committed marital waste due to gambling.

Wife failed to pay her share of the mortgage and home equity loan, which resulted in foreclosure of the former marital home. As such, the parties' pay was garnished to satisfy the deficiency judgment. Wife obtained her share of Husband's TSP retirement but failed to submit a COAP to divide Husband's FERS account.

On June 10, 2024, almost sixteen years after the entry of the divorce order, Wife filed the COAP along with a Rule 22(b) notice[3] of submission of the proposed order to obtain her share of Husband's FERS account. The proposed COAP awarded Wife fifty

---

[3] Rule 22(b) of the West Virginia Rules of Practice and Procedure for Family Court addresses the preparation of orders and states, in part:

An attorney assigned to prepare an order or proposed findings shall deliver the order or findings to the court no later than ten days after the conclusion of the hearing giving rise to the order or findings. Within the same time period the attorney shall send all parties copies of the draft order or findings together with a notice which informs the recipients to send written objections within five days to the court and all parties. If no objections are received, the court shall enter the order and findings no later than three days following the conclusion of the objection period. If objections are received, the court shall enter an order and findings no later than ten days after the receipt of the objections.

percent of Husband's annuities, a marital portion of any disability pension available, a cost-of-living adjustment, and survivor benefits, none of which were addressed in the parties' divorce order. On June 15, 2024, Husband filed objections to the COAP arguing that Wife allowed the marital home's foreclosure; his wages were garnished due to Wife's failure to pay her half of the mortgage payments; Wife had her nursing license suspended during the marriage after stealing medication which caused extreme financial hardship; Wife now earns more than Husband; and Wife squandered at least $153,000 and did not deserve a share of his FERS retirement, particularly after waiting sixteen years to file the proposed COAP.

On August 1, 2024, Husband filed a petition for contempt against Wife for her failure to pay her share of the mortgage on the marital home, resulting in its foreclosure. On September 24, 2024, Husband filed a motion for summary judgment arguing that Wife was barred by the statute of limitations and the equitable doctrine of laches from collecting her share of his FERS retirement account.

In October 2024, Wife filed a motion to dismiss Husband's petition for contempt arguing that Husband had notice of Wife's missed mortgage payments and could have paid them himself and then sought reimbursement from the court. Wife further argued that both parties' pay was garnished due to the foreclosure; she paid a total of $15,750.65 on the foreclosure judgment; and that Husband's contempt action was barred by the statute of limitations. Wife also filed a response to Husband's motion for summary judgment arguing that the statute of limitation does not apply to the entry of a COAP and that the Supreme Court of Appeals of West Virginia ("SCAWV") has consistently held that the late submission of a QDRO/COAP was not barred by laches when the delay did not prejudice the former employee.

A final hearing on all issues was held on October 24, 2024. The final order was entered on November 15, 2024. The family court made findings of fact and conclusions of law which are summarized as follows:

- Husband's FERS account was a defined benefit retirement[4] plan with the monthly benefit determined based upon the highest three years of earnings.

---

[4] There are two types of retirement accounts—defined contribution and defined benefit plans. A defined contribution plan provides benefits solely upon the monetary contributions to the plan by the employee and sometimes by the employer; these plans grow by active appreciation with each contribution and are simple to divide. A defined benefit plan provides benefits based on other criteria, such as years of employment, and are usually not paid until the employee retires. Defined benefit plans generally require the use of an expert witness, agreement of the parties, or use of the coverture fraction. A coverture fraction is a mathematical tool used to determine the portion of a retirement

- During the divorce, neither party sought to have the FERS account valued. Therefore, it had to be defined using the coverture fraction (the period during the marriage that Husband was employed by the FBI divided by the total period of his employment with the FBI).
- The COAP should provide that any benefit related to a military credit is Husband's sole benefit.
- Neither West Virginia Code § 55-2-6 nor § 38-3-18 apply to the entry of a QDRO or COAP.[5]

benefit that is considered marital property in a divorce and is calculated by dividing the total period of time the pension holder participated in the plan during the marriage by the total period of time the pension holder participated in the plan as of the date of separation. Husband's FERS account was a defined benefit plan.

[5] West Virginia Code § 55-2-6 (2025) addresses actions to recover on an award or contract other than a judgment or recognizance.

West Virginia Code § 38-3-18 (2008) addresses limitations on enforcement of judgments, and states:

(a) On a judgment, execution may be issued within ten years after the date thereof. Where execution issues within ten years as aforesaid, other executions may be issued on such judgment within ten years from the return day of the last execution issued thereon, on which there is no return by an officer, or which has been returned unsatisfied.

(b) For any order for child support in an action filed on and after the amendment and reenactment of this section during the legislative session of two thousand eight, an execution may be issued upon a judgment for child support, as those terms are defined in chapter forty-eight of this code, within ten years after the emancipation of the child: *Provided,* That in cases where the support order is for more than one child, the limitations set forth in subsection (a) of this section commence when the youngest child who is the subject of the order on which the execution is based reaches the age of eighteen or is otherwise legally emancipated.

(c) An action, suit or scire facias may be brought upon a judgment where there has been a change of parties by death or otherwise at any time within ten years next after the date of the judgment; or within ten years from the return day of the last execution issued thereon on which there is no return by an officer or which has been returned unsatisfied. But if such action, suit or scire facias be against the personal representative of a decedent, it shall be brought within five years from the qualification of such representative.

- In a laches claim, delay alone is insufficient; the moving party also must prove that he was prejudiced by the delay.
- Husband has not shown that he was prejudiced by the delay.
- Had the COAP been prepared immediately after the entry of the divorce order as opposed to sixteen years later, Wife would receive the same proportion utilizing the coverture fraction.
- No evidence was presented by Husband that relevant evidence was lost by virtue of Wife's delay.
- Use of the coverture fraction is the court's only choice when neither party presented testimony valuing the pension during the divorce case.
- Cost of living adjustment ("COLA") increases are appropriate to include in the COAP because neither party will incur any costs related to the benefit.
- If Husband receives an annuity supplement, it should be allocated between the parties based upon their share of the basic annuity.
- The proposed COAP should be amended to reflect that Wife may only receive survivor benefits if Husband elects it and Husband's new wife agrees in writing.
- Paragraph 4(C) of the COAP which addresses the cost of former spouse annuity shall be deleted.
- Husband's claim that any award of his FERS benefit should be offset by Wife's failure to pay her share of the mortgage and home equity loan on the marital home is not actionable because the events related to the marital home occurred at least fourteen years ago and contempt actions on a monetary award are subject to a ten-year statute of limitations.

It is from the November 15, 2024, order that Husband now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Husband raises three assignments of error. First, he asserts that the family court erred by permitting the case to proceed with the Rule 22(b) notice that Wife

submitted with her proposed COAP because Husband should have had more than the five days allotted by Rule 22(b) to respond. Because this issue was not raised below or preserved for appeal during the family court proceeding, we decline to address it on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (per curiam) (citations and quotations omitted) ("Our general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered."); *PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (Ct. App. 2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal).

In his second assignment of error, Husband contends that Wife's claims violate the ten-year statute of limitations in West Virginia Code § 38-3-18. We disagree. Upon our review of West Virginia Code § 38-3-18, we note that it addresses judgments and child support and is, therefore, inapplicable to a QDRO or COAP. Additionally, the Supreme Court of Appeals of West Virginia ("SCAWV") has routinely held that "the distribution of retirement benefits [. . .] to a former spouse is accomplished through a QDRO and not through the terms of the final order of divorce." *Jones v. W. Va. Pub. Employees Ret. Sys.*, 235 W. Va. 602, 613, 775 S.E.2d 483, 494 (2015). The Court also has emphasized that "a QDRO is merely the vehicle by which a former spouse seeks to enforce an interest in a pension plan that has already been determined to exist." *Id.* at 617, 775 S.E.2d at 498. Because Wife is enforcing her interest in Husband's FERS account that was determined in the final divorce order to exist, we cannot conclude that the family court's ruling was erroneous or an abuse of discretion on this assignment of error.

Third, Husband argues that the award to Wife was contrary to public policy which supports finality and certainty. In support of his argument, he states that it would be unfair for Wife to benefit from Husband's highest three years of pay after sitting on her rights for sixteen years and that the family court erroneously found that Husband was not prejudiced by Wife's delay—essentially, Husband argues that the doctrine of laches[6] should have barred Wife's claim. We disagree, as this argument has been consistently denied by the SCAWV. *See* Syl. Pt. 3, *Carter v. Carter*, 107 W. Va. 394, 148 S.E. 378 (1929) (stating "[d]elay alone does not constitute laches; it is delay which places another at a disadvantage."); *Grose v. Grose*, 222 W. Va. 722, 728, 671 S.E.2d 727, 733 (2008) (finding that a sixteen year delay between the equitable distribution order and the QDRO did not bar wife from submitting the QDRO and obtaining benefits); Syl. Pt. 4, *State ex rel. DHHR v. Carl Lee H.*, 196 W. Va. 369, 472 S.E.2d 815 (1996) ("Mere delay will not bar relief in equity on the ground of laches."). Here, the family court provided a thorough analysis and determined that (1) Husband presented no evidence to suggest that relevant evidence was

_____

[6] The doctrine of laches is "an equity doctrine to the effect that unreasonable delay will bar a claim if the delay is a prejudice to the defendant." *Kinsinger v. Pethel*, 234 W. Va. 463, 467, 766 S.E.2d 410, 414 (2014) (quoting 1 Dan B. Hobbs, *Handbook on the Law of Remedies* § 2.4(4) (2d ed. 1993)).

lost by virtue of Wife's delay; (2) neither party would incur additional costs if a COLA is included in the COAP; (3) Wife would receive the same proportion as she would have sixteen years ago; and (4) Husband failed to show that he was prejudiced by the delay. Given these findings and the deference[7] that must be afforded the family court, we cannot conclude that the family court's factual determinations are erroneous or an abuse of discretion.

Wife raised one cross-assignment of error on appeal. She contends that the family court erred when it held that her interest in a survivor annuity was contingent upon the consent of Husband's current wife. We disagree. Pursuant to 5 U.S.C.A. § 8417(b)(3)(B) (1986), an employee spouse who has a former spouse "may elect" a reduction in their annuity "to provide a survivor annuity for such former spouse." It further states, "an election under this subsection [. . .] shall not be effective, in the case of an employee or Member who is then married, unless it is made with the spouse's written consent." Because the applicable Code sections specifically state that Husband's current wife must provide written consent, we affirm the family court on this issue.

Accordingly, we affirm the family court's November 15, 2024, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[7] *See, e.g., Porter v. Bego*, 200 W. Va. 168, 173, 488 S.E.2d 443, 448 (1997) ("We have repeatedly stated that we will accord great deference to findings of fact by a family [court]."); *Jacob H. v. Siera G.*, No. 24-ICA-147, 2024 WL 4787833, at *3 (W. Va. Ct. App. Nov. 14, 2024) (memorandum decision) (internal citations and quotations omitted) ("A family court's decision is entitled to significant deference.")

7